IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHAWN S., | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 2:25-cv-00014** |
| | : | |
| v. | : | **Judge Algenon L. Marbley** |
| | : | |
| COMMISSIONER OF SOCIAL | : | **Magistrate Judge Caroline H. Gentry** |
| SECURITY, | : | |
| | : | |
| **Defendant.** | : | |

## OPINION & ORDER

This matter is before this Court on Defendant Commissioner of Social Security's Objections to the Magistrate Judge's Report and Recommendation. (ECF No. 11). For the reasons set forth below, the Magistrate Judge's Report and Recommendation (ECF No. 10) is **ADOPTED.** Accordingly, the Commissioner's Objections (ECF No. 11) are **OVERRULED**, the Commissioner's decision is **REVERSED**, and the case is **REMANDED** for the immediate award of benefits to Plaintiff Shawn S. for the period of disability between September 26, 2013, and December 31, 2014, and for further proceedings for the period since January 1, 2015.

## I.     BACKGROUND

Plaintiff filed an SSI application for disability on September 26, 2013, alleging a disability beginning July 15, 2005. (ECF No. 10 at 3). His claim was initially denied by the Administrative Law Judge (ALJ) for failing to meet the requirements for "disability" status under the Social Security Act. (*Id.* at 1). The Appeals Council denied Plaintiff's request for review, and Plaintiff filed in federal court. (*Id.*). The Court remanded the case to the Commissioner under 42 U.S.C § 405(g) after the parties requested a joint remand. (*Id.* at 1–2). The ALJ held a hearing on remand and determined that Plaintiff was not under a "disability." (*Id.* at 2). The Appeals

Council once again denied the Plaintiff's request for review, and Plaintiff filed in federal court for a second time. (*Id.*). The Court remanded again under 42 U.S.C § 405(g) after the parties' joint motion. (*Id.*). A new ALJ heard the case, and this ALJ also determined that Plaintiff did not meet the requirements to be considered disabled under the Social Security Act. (*Id.*). Plaintiff filed his third action with this Court. (*Id.*). The Court remanded to the Commissioner again under 42 U.S.C § 405(g). (*Id.*). The same ALJ held another hearing and once again concluded that the Plaintiff was not under a "disability" as defined in the Social Security Act. (*Id.*). Plaintiff then filed this action. (*Id.*).

In this action, Plaintiff seeks an order either remanding this matter to the Commissioner for the award of benefits or for further proceedings. (*Id.*). The Commissioner seeks an order affirming the non-disability decision. (*Id.*).

The ALJ decision at issue was made on September 16, 2024. (ECF No. 7–21). The ALJ considered each of the five sequential steps in the evaluation process outlined in the Social Security Regulations. 20 C.F.R. §§ 404.1520, 416.920; (*Id.* at 7). At step one, the ALJ found that Plaintiff had not worked since the application date of September 26, 2013. (*Id.* at 8–9). At step two, the ALJ determined that Plaintiff had bipolar disorder, oppositional defiant disorder, ADHD, radiculopathy, asthma, gastroesophageal reflux disease, and cannabis use disorder. (*Id.* at 9–10). At step three, the ALJ held that the impairments did not meet or equal the severity of one of the listed impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 10–15). At step four, the ALJ determined that the Plaintiff's residual functional capacity (RFC), or the most he can do despite his impairments, is as follows:

> [H]e can have no more than four hours of standing and/or walking during the workday; occasional climbing of ramps and stairs; no climbing, ladders, ropes, or scaffolds; occasional balancing, stooping, and crouching; no kneeling or crawling; no exposure to workplace hazards such as unprotected heights or dangerous,

unprotected moving mechanical parts; occasional exposure to humidity and extreme heat and cold; and occasional exposure to concentrated irritants such as visible dust clouds, noxious odors, caustic fumes, and other such pulmonary irritants. Mentally, [Plaintiff] retain[s] the capacity to perform simple, routine, repetitive tasks, but not at a production rate pace such a one has with assembly line work; can have no more than occasional interactions with supervisors, coworkers, and the public; interactions with others would be superficial, meaning interactions would be limited to the straightforward exchange of information, without negotiation, persuasion, conflict resolution, close teamwork, tandem work, or over the shoulder supervision; no more than occasional, minor changes in duties, routine, and the work setting; and he can have no contact with or access to illegal drugs as part of the job duties, such as one might have in a law enforcement setting."

(*Id.* at 15–16). At step five, the ALJ concluded that there are jobs in significant numbers in the national economy that Plaintiff can perform. The ALJ therefore determined that Plaintiff was not under a "disability" and is not entitled to benefits. (*Id.* at 28).

Dr. Dory Sisson examined Plaintiff on February 3, 2014. (ECF No. 7-7 at 53). Dr. Sisson is a mental health expert who Social Security hired to assess Plaintiff's mental capacity. (*Id.*). Dr. Sission evaluated Plaintiff and diagnosed him with ADHD, a mood disorder, and psychosis by history. (*Id.* at 62–63). Dr. Sisson did find that Plaintiff would be able to understand basic instructions and complete basic work tasks. (*Id.* at 63). However, Dr. Sisson concluded that Plaintiff had difficulty concentrating, difficulty maintaining attention, and difficulty remembering instructions, making it likely he would need instructions repeated. (*Id.*). Plaintiff was expected to need increased supervision. (*Id.*). Dr. Sisson also determined that, due to learning disabilities experienced in school, Plaintiff likely had an impaired ability to read and write. (*Id.*). Plaintiff demonstrated difficulty with math and would require assistance with fund management. (*Id.* at 64). Dr. Sisson also found that Plaintiff needed an environment that had minimal distractions, ability to take breaks, and helpful redirection. (*Id.* at 63).  Dr. Sisson determined that Plaintiff could demonstrate verbal outbursts and would dislike working in large

groups of people due to anxiety, so he was limited to a low-stress work environment. (*Id.* at 63–64).

The ALJ afforded little weight to Dr. Sisson's opinion. (ECF No. 7-21 at 26). The ALJ acknowledged that Dr. Sisson evaluated Plaintiff in person, but the ALJ discounted her opinions for being vague and not in vocationally appropriate terms. (*Id.* at 25–26). The ALJ discounted Dr. Sissons' opinion using the testimony of Dr. Michael Lace, who testified at the December 2021 and August 2024 hearings after reviewing the record. (ECF Nos. 7-15 at 18; 7-21 at 25–26). Dr. Lace stated that Plaintiff would no longer need instructions repeated, increased supervision, minimal distractions, or extra breaks, as Dr. Sisson opined, if Plaintiff were limited to simple routine tasks. (ECF No. 7-21 at 24, 25–26).

Psychologist Dr. Lee Roach evaluated Plaintiff's mental health on July 1, 2014. (ECF No. 7-7 at 67). Dr. Roach concluded that, due to Plaintiff's ADHD, Plaintiff had difficulty concentrating and experienced major attention lapses, restricting his ability to perform tasks or work at an appropriate pace. (*Id.* at 76–78). Dr. Roach opined that Plaintiff needed a highly structured work environment. (*Id.*). Dr. Roach also noted that Plaintiff had difficulty with spelling and math. (*Id.*). Dr. Roach determined that Plaintiff had moderate difficulty interacting with others and in dealing with stress and he demonstrated low emotional maturity, coping skills, and problem-solving skills. (*Id.*).

The ALJ gave some weight to Dr. Roach's opinion. (ECF No. 7-21 at 26). The ALJ discounted Dr. Roach's opinion by applying Dr. Lace's more recent testimony and highlighting the fact that Dr. Roach's opinion is ten years old. (*Id.*). The ALJ also noted that Dr. Lace stated that the limitations Dr. Lace opined would eliminate Dr. Roach's concerns about assistance, coaching, and accommodations. (*Id.*).

4

Plaintiff was also examined by two state agency psychological consultants, Dr. Finnerty and Dr. Zeune. (ECF No. 7-3 at 14, 29). Dr. Todd Finnerty completed an evaluation in February 2014. (*Id.* at 14). He opined that Plaintiff would be capable of following instructions for basic work tasks but would need instructions repeated. (*Id.* at 13). Plaintiff would be limited to simple tasks at a slow pace, with only superficial interactions with others, and a static work environment without frequent changes or distractions. (*Id.*). Dr. Finnerty also acknowledged that Plaintiff had learning disabilities in school and was currently diagnosed with ADHD. (*Id.*). Dr. Courtney Zeune updated the record in May 2014. (*Id.* at 29). Dr. Zeune affirmed Dr. Finnerty's findings regarding understanding and memory, need for repeated instructions, concentration, and social interaction. (*Id.* at 28–29). Dr. Zeune additionally opined that Plaintiff could complete simple tasks in a work setting without strict quotas and with no necessary prolonged periods of concentration. (*Id.*). Dr. Zeune found that Plaintiff would require breaks. (*Id.* at 28). In addition, Plaintiff would be capable only of infrequent superficial interactions and did best in non-public settings. (*Id.*). Dr. Zeune also concluded that Plaintiff would be able to work in a static work environment without frequent changes, and where changes could be adequately explained and gradually implemented. (*Id.* at 29).

The ALJ gave some weight to Dr. Zeune's opinion and less weight to Dr. Finnerty's opinion. (ECF No. 7-21 at 24–25). The ALJ gave great weight to Dr. Zeune's opinion that Plaintiff should be limited to "simple tasks with no strict production quotas, superficial interactions with infrequent contact with supervisors and coworkers, and a static stetting without frequent changes," because they are consistent with the overall record, specifically with Dr. Lace's testimony. (*Id.* at 25). However, the ALJ discounted Dr. Zeune's opinion that Plaintiff needs instructions repeated, gradual changes, and breaks, because Dr. Lace found these

limitations unnecessary. (*Id.*). Less weight was given to Dr. Finnerty because subsequent assessment by Dr. Zeune provides more specific limitations. (*Id.*).

Dr. Michael Lace reviewed the record and testified as a medical expert in December 2021 and August 2024. (ECF Nos. 7-15 at 18; 7-21 at 24). Dr. Lace stated that Plaintiff showed signs of a mood disorder, mood dysregulation disorder, ADHD, impulse control disorder, learning disorder, and history of cannabis dependence. (ECF No. 7-15 at 49–50). Dr. Lace mentioned that the medical records indicated an older diagnosis of schizophrenia that was only occasionally cited. (*Id.* at 49). Dr. Lace opined that Plaintiff was limited to simple routine, and repetitive tasks, no fast paced production line work, occasional and superficial contact with others, and no contact with illegal drugs and specifically cannabis. (*Id.* at 52). Dr. Lace stated that Plaintiff had moderate impairment in all four "B criteria" areas of functioning. (*Id.*). Dr. Lace stated that, with the limitations suggested above, there would be no need to repeat instructions, increase supervision, and there would be no concern about verbal outbursts. (*Id.* at 53–54).

The ALJ gave great weight to Dr. Lace's opinion. (ECF No. 7-21 at 24). The ALJ emphasized that Dr. Lace had access to "all the medical evidence on the record" because he testified in 2021 and 2024 rather than an earlier period, like 2014, and therefore had a "greater longitudinal perspective" of Plaintiff's condition. (*Id.*). The ALJ found that Dr. Lace's analysis was "consistent with and supported by objective clinical findings found in the record." (*Id.*).

Plaintiff, in his sole assignment of error, contends that the ALJ's mental RFC is not supported by the substantial evidence of record. He argues that the ALJ "erroneously rejected or devalued almost every mental health opinion in order to rely almost exclusively on the testimony of the non-examining medical expert who testified at the hearing." (ECF No. 8 at 8). The Magistrate Judge issued a Report and Recommendation, recommending that this Court reverse the

ALJ's decision for committing reversible error when analyzing the opinions of consultative psychologist Dr. Sisson, examining psychologist Dr. Roach, and the state agency psychological consultants. (ECF No. 10 at 25). The Magistrate Judge recommended that, for the closed period of disability from the SSI application date of September 26, 2013, to December 14, 2014, the case be remanded for an immediate award of benefits. (*Id.* at 35). The Magistrate Judge also recommended the case be remanded under 42 U.S.C § 405(g) for further proceedings on the period since January 1, 2015. (*Id.* at 35–36).

The Commissioner objects to the Magistrate Judge's Report & Recommendation on two grounds: 1) the ALJ's RFC finding should be affirmed because it is supported by substantial evidence; and 2) if remand is necessary, it should be for further proceedings, not an award of benefits. (ECF No. 11).

## II.     STANDARD OF REVIEW

When reviewing a party's objections to a Report and Recommendation, a district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."). Upon review, the district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3).

Judicial review of the ALJ's decision requires the Court to "determine whether the record as a whole contains substantial evidence to support the ALJ's decision" and to "determine whether the ALJ applied the correct legal criteria." *Inman v. Astrue*, 920 F. Supp. 2d 861, 863 (S.D. Ohio 2013). Substantial evidence means relevant evidence that "a reasonable mind might accept as

adequate to support a conclusion." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quotation omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). If the ALJ's decision is supported by substantial evidence, then "this Court defers to that finding even if there is substantial evidence in the record that would have supported the opposite conclusion. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quotation omitted).

An ALJ's failure to apply the correct legal criteria, including appropriate rules and regulations, will result in a reversal even if the decision is otherwise supported by the evidence in the record. *Id.* at 407; *see also Bowen v. Comm'r of Soc. Sec.,* 741 F.3d 708, 746 (6th Cir. 2007) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)). Failure to follow the legal requirements "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Blakley*, 581 F.3d at 407 (quoting *Rogers*, 486 F.3d at 243).

### III.    ANALYSIS

The Plaintiff asserts that the ALJ's mental RFC is not supported by substantial evidence. (ECF No. 8 at 1). The Plaintiff argues that the ALJ erroneously relied on testifying medical expert Dr. Lace's opinion and devalued the opinions of consultative psychologist Dr. Sisson, examining psychologist Dr. Roach, and the state agency psychological consultants. (*Id.* at 8). The Magistrate Judge agreed with Plaintiff's contention, finding that the ALJ failed to build a logical bridge between the RFC, Dr. Lace's opinions, and the discounted portions of Dr. Sisson, Dr. Roach, and the state agency psychological consultant's opinions. (ECF No. 10 at 26). In addition, the Magistrate Judge found that the ALJ did not base the RFC on the entire period at issue and instead relied heavily on recent medical evidence. (*Id.* at 28). The Commissioner objects to the Magistrate

Judge's R&R, asserting that the Magistrate Judge should have affirmed the ALJ's decision because the mental RFC finding was supported by substantial evidence. (ECF No. 11 at 8).

The Magistrate Judge recommended that the case be remanded for an immediate award of benefits for a closed period, September 26, 2013, to December 14, 2014,  and remanded under 42 U.S.C § 405(g) for further proceedings on the period since January 1, 2015. (ECF No. 10 at 35–36). The Commissioner objects, arguing that if remand is necessary, it is proper for the Court only to remand for further proceedings, not for an award of benefits. (ECF No. 11 at 8–10).

### A.  Standard for Weighing Expert Medical Opinions

When formulating the RFC, the ALJ must consider all relevant evidence in the record, including all medical evidence. *See* 20 C.F.R. § 404.1520(a). The ALJ must follow certain standards when assessing medical evidence in support of a claim for disability benefits. When evaluating medical evidence, "greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers*, 486 F.3d at 242 (citations omitted). The treating physician rule exists because these opinions "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)." 20 C.F.R. § 404.1527(d)(2); *Blakley*, 581 F.3d at 406 (citations omitted). In addition, the ALJ must "'always give good reasons' for the weight ascribed to a treating-source opinion." *Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 552 (6th Cir. 2020) (citing 20 C.F.R. § 404.1527(c)(2); *Rogers*, 486 F.3d at 242). The good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Lewis-Money v. Comm'r of Soc. Sec.*, 142 F. Supp. 3d 631, 640 (S.D. Ohio 2015) (quoting *Blakley*, 581 F.3d at 406-07). The notice requirement ensures that "each

denied claimant receives fair process." *Rogers*, 486 F.3d at 243. Regardless of the source of a medical opinion, the ALJ should evaluate every medical opinion by weighing several factors: the examining relationship, treatment relationship, supportability, consistency, specialization, and any other relevant factors. 20 C.F.R. § 416.927(c).

The ALJ is also required to consider evidence from the entire relevant period when determining the RFC. "While the substantial evidence standard is deferential, the Sixth Circuit has emphasized that the chief limitation to that deference 'is the requirement that all determinations be made based upon the record in its entirety.'" *White v. Comm'r Soc. Sec*, 2022 WL 3282429, at *14 (N.D. Ohio June 1, 2022), (quoting *Rogers*, 486 F.3d at 249). The ALJ must consider the entire relevant time period at issue when formulating the RFC and must not "unduly concentrate on one single aspect of the claimant's history." *Rogers*, 486 F.3d at 249; *White v. Commr. of Soc. Sec.*, 2022 WL 3097385, at *4 (N.D. Ohio Aug. 4, 2022) (finding that the ALJ "did consider the entire relevant time period in developing the RFC").

When the ALJ states his decision, he also must "show [their] work" and explain how the factors were applied to the case. *Scott K. v. Comm'r of the SSA*, 2022 WL 4484603, at *4 (S.D. Ohio Sept. 27, 2022) (citing *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 2021 WL 3702170, at *6 (E.D. Mich. 2021). An ALJ's decision cannot be upheld "even if there is enough evidence in the record to support the decision, where the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (cleaned up) (citations omitted). Requiring an accurate and logical bridge ensures "sufficient rationale for a reviewing adjudicator or court" and ensures "that a claimant whose application has been denied understands why." *Kimberly S. v. Comm'r of Soc. Sec.*,

2022 WL 17820565, at *3 (S.D. Ohio Dec. 20, 2022); *Collins v. Comm'r of Soc. Sec.*, 2018 WL 3372950, at *2 (N.D. Ohio July 11, 2018).

### B. Weight of Consultative Psychologist Dr. Sisson, Examining Psychologist Dr. Roach, and the State Agency Psychological Consultant's Opinions

The Magistrate Judge correctly concluded that the ALJ erroneously relied on testifying medical expert Dr. Lace's opinion to discount the expert medical opinions of Dr. Sisson, Dr. Roach, Dr. Finnerty, and Dr. Zeune. (ECF No. 10 at 25). The Magistrate Judge reasoned that the ALJ failed to build a logical bridge between how the limitations opined by Dr. Lace rendered unnecessary the limitations identified by Dr. Sisson, Dr. Roach, and the state agency psychological consultants. (*Id.*). In addition, the Magistrate Judge argued that the ALJ failed to base the RFC on evidence of the entire period at issue. (*Id.*). This Court agrees, finding that the ALJ committed reversible error when analyzing the opinions of Dr. Sisson, Dr. Roach, Dr. Finnerty, and Dr. Zeune.

The ALJ failed to explain adequately the RFC by failing to build a logical bridge between the RFC limitations asserted by Dr. Lace and the decision to discount the limitations of Drs. Sisson, Roach, Finnerty, and Zeune. Dr. Sisson, Dr. Roach, Dr. Finnerty, and Dr. Zeune all included mental limitations in their evaluations that were not included in the ALJ's RFC determination. Dr. Sission opined on the limitations of repeated instruction, increased supervision, a low-stress environment with minimal distractions, the ability to take breaks, and redirection. (ECF No. 7-7 at 62–64). Dr. Roach opined on the limitations of a highly structured work environment. (*Id.* at 76–78). Dr. Finnerty and Dr. Zeune opined on the limitations of repeated instructions, flexible break schedules, static work environments without distractions, limited changes, and gradual implementation of changes. (*Id.* at 13–14, 28–29). Each of the aforementioned medical expert opinions were discounted by the ALJ. (ECF No. 7-21 at 24–26). The ALJ asserted that the RFC mental limitations

11

suggested by Dr. Lace accounted for all their opinions. (*Id.*). Dr. Lace stated that certain limitations, such as increased supervision, repetition of instructions, and flexible break schedules, were rendered unnecessary by his limitation, which included work of simple, routine, and repetitive tasks. (*Id.*). Dr. Lace did not explain why his limitation rendered other limitations that he did not include unnecessary. (*Id.*). Nor did the ALJ explain why the additional limitations asserted by the four medical experts were unnecessary. (*Id.*). The ALJ merely accepted Dr. Lace's assertion that the other limitations were unnecessary and relied entirely upon Dr. Lace's opinion without discussing the other objective medical evidence when discounting the other expert's opinions. (*Id.*).

This Court acknowledges that if the ALJ's decision is supported by substantial evidence, then "this Court defers to that finding even if there is substantial evidence in the record that would have supported the opposite conclusion." *Blakley*, 581 F.3d at 406. In addition, the ALJ's decision "need not be so comprehensive as to account with meticulous specificity for each finding and limitation, nor is the ALJ required to discuss every piece of evidence in the record." *Correa v. Comm'r of Soc. Sec.*, 2023 WL 9064960, at *10 (N.D. Ohio Dec. 14, 2023). However, the ALJ still must provide sufficient rationale to "build an accurate and logical bridge between the evidence and the result" to be upheld. *Fleischer*, 774 F. Supp. 2d at 877 (citations omitted). The explanation must allow the reviewing court to "trace the path of [the ALJ's] reasoning" and must explain how the evidence supports the RFC determination "with specificity." *Correa*, 2023 WL 9064960, at *10–11 (citations omitted).

In this case, the ALJ did not provide a sufficient rationale as to how Dr. Lace's limitation recommendation made the other experts' limitations unnecessary. (ECF No. 7-21 at 24–26). Nor did the ALJ adequately explain why he did not include limitations corroborated by multiple mental health experts who evaluated Plaintiff. (*Id.*). For example, all four experts made references to

necessary limitations in work environment: Dr. Sisson opined Plaintiff would require an environment with minimal distractions, (ECF No. 7-7 at 63), Dr. Roach opined a highly structured environment, (*Id.* at 76–78), and the state agency Drs. Finnerty and Zeune opined an environment without distractions or frequent changes. (ECF No. 7-3 at 13–14, 28–29). Drs. Sisson, Finnerty, and Zeune also all stated that Plaintiff required repeated instructions. (ECF Nos. 7-7 at 63; 7-3 at 13, 28–29). The ALJ did not explain why these limitations were nullified by Dr. Lace's limitation to a simple and repetitive work task. (ECF No. 7-21 at 24–26). Further, the ALJ did not explain his reasoning "with specificity" and did not build "an accurate and logical bridge" between the evidence of four mental health experts corroborating Plaintiff's condition in 2014 and suggesting substantially similar or the same limitations and the result of discounting those opinions. (*Id.*); *Correa*, 2023 WL 9064960, at *10–11.

Furthermore, the Magistrate Judge correctly determined that the ALJ erred by failing to account for evidence from the entire period at issue and relying too heavily on recent evidence. (ECF No. 10 at 28). The ALJ must determine RFC by considering "the record in its entirety" and must not "unduly concentrate on one single aspect of the claimant's history." *Rogers*, 486 F.3d at 249. The ALJ emphasized Dr. Lace's opinion and gave it "great weight" because of the "greater longitudinal perspective" he had, while discounting medical sources from early in the record. (ECF No. 7-21 at 25). The ALJ unduly concentrated on the improvement after 2018, the later years in Plaintiff's claimed period. (ECF Nos. 7-26; 7-15 at 16–17; 7-21 at 19). The ALJ did not include significant information from early in the relevant period, including multiple months in 2014, where Plaintiff demonstrated periods of preoccupation with violence, mood issues, impaired attention span, and distractibility. (ECF No. 7-7 at 116–117, 134–35). In addition, the ALJ diminished evidence of Plaintiff's struggle with the adverse side effects of medication, such as hearing voices

13

and having a dreamy feeling. (*Id.* at 4). The ALJ unduly discounted significant conclusions from qualified experts, Drs. Sisson, Roach, Finnerty, and Zeune, which all took place in 2014. (ECF Nos. 7-7 at 62–64, 76–78; 7-3 at 13–14, 28–29). The ALJ erred in failing to consider the record in its entirety because the entire period at issue was not considered in the RFC determination.

The Commissioner contends in Objections that the Magistrate Judge improperly conducted *de novo* review and reweighed the evidence herself. (ECF No. 11 at 5–6). In addition, the Commissioner argued that the RFC findings were supported by substantial evidence. (*Id.* at 2). This Court disagrees. There are two relevant limitations to the deferential substantial evidence standard at issue here: 1) an ALJ's decision cannot be upheld "even if there is enough evidence in the record to support the decision, where the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result[;]" and 2) the ALJ is required to consider evidence from the entire relevant period when determining the RFC. *Fleischer*, 774 F. Supp. 2d at 877 (citations omitted); *White*, 2022 WL 3282429, at *11. The Magistrate Judge acted well within her judicial authority by applying the substantial evidence standard to review the administrative record. This Court has determined that the ALJ's errors led to a failure to meet the substantial evidence standard because the ALJ failed to build adequately a logical bridge between the evidence and the RFC determination and did not consider evidence from the entire period at issue. The ALJ failed to meet the substantial evidence standard. The ALJ committed reversible error because the limited explanation in the RFC determination prevents meaningful judicial review. *See Shields v. Comm'r Soc. Sec.*, 732 F. App'x 430, 440 (6th Cir. 2018) ("[A]n ALJ's failure to follow agency procedures does not constitute harmless error when it prevents us from meaningfully reviewing his or her decisions."). Therefore, this Court reverses the ALJ's finding.

14

### C.  Remanding for Partial Award and Further Proceedings

Under 42 U.S.C. § 405(g), the court is authorized to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for a rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). "When a nondisability determination is not supported by substantial evidence, [the court] must decide whether to reverse and remand the matter for further proceedings or to reverse and order benefits granted." *Hicks v. Comm'r of Soc. Sec.*, 2025 WL 3688892, at *3 (6th Cir. Dec. 19, 2025). An immediate award of benefits is only appropriate "if all essential factual issues have been resolved and the record adequately established a plaintiff's entitlement to benefits" and "the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." *Faucher v. Sec'y of Health & Hum. Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Inman v. Astrue*, 920 F. Supp. 2d 861, 867 (S.D. Ohio, 2013).

The ALJ failed to consider a closed period of benefits. (ECF No. 7-21). The Magistrate Judge correctly determined that the record contains overwhelming evidence of disability, with little evidence to the contrary, for the period between September 26, 2013, and December 31, 2014. (ECF No. 10 at 34–36). The expert medical opinions of Dr. Sisson, Dr. Roach, Dr. Finnerty, and Dr. Zeune are substantially similar to one another and provide overwhelming evidence that Plaintiff was disabled during the period at issue. (ECF Nos. 7-7 at 62–64, 76–78; 7-3 at 13–14, 28–29). As described above, the limitations asserted by these four experts are corroborated with each other and altogether provide significant evidence of disability. (*Id.*). The Commissioner asserts that there are unresolved factual issues and evidence to the contrary. (ECF No. 11 at 9–10). This Court disagrees, finding that "all essential factual issues" have been resolved for the closed

15

period and that the purported contrary evidence is still "lacking" in comparison to the highly probative evidence that Plaintiff was disables between September 26, 2013 and December 31, 2014.

The Magistrate also correctly determined, however, that there are unresolved factual issues for the period after January 1, 2015. (ECF No. 10 at 35–36). It is appropriate to remand for further proceedings under 42 U.S.C § 405(g) where the proof of disability is not overwhelming. *Faucher*, 17 F.3d at 176. On remand, the ALJ should further develop the record, evaluate Plaintiff's disability claim under the applicable sequential five-step analysis, and determine whether Plaintiff is disabled under the applicable law for the period after January 1, 2015.

## IV.     CONCLUSION

For the reasons stated above, Defendant's Objection to the Magistrate Judge's Report and Recommendation (ECF No. 11) is **OVERRULED**. This Court hereby **ADOPTS** the Magistrate Judge's Report and Recommendation. (ECF No. 10). The Commissioner's decision is **REVERSED**, and the case is **REMANDED** for the immediate award of benefits to Plaintiff Shawn S. for the period of disability between September 26, 2013, and December 31, 2014, and for further proceedings for the period since January 1, 2015.

**IT IS SO ORDERED.**

_____
ALGENON L. MARBLEY
**DATED:  March 31, 2026**          **UNITED STATES DISTRICT JUDGE**

16